Luther R. HUMPHRIES and Martha Humphries, Plaintiffs,

v.

UNITED STATES of America, Defendant.

John M. HUMPHRIES, Plaintiff,

v.

UNITED STATES of America, Defendant.

Marie Sauls HUMPHRIES, Plaintiff,

v.

UNITED STATES of America, Defendant.

Stanley C. HUMPHRIES, a minor, by his Guardian ad Litem, John M. Humphries, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 7795, 7824, 7841, and 7843.

United States District Court
E. D. South Carolina,
Charleston Division.

Oct. 19, 1964.

Dowling, Dowling & Sanders, Beaufort, S. C., for plaintiffs.

Terrell L. Glenn, U. S. Dist. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

SIMONS, District Judge.

These four cases arose out of the same automobile accident, were consolidated and were tried before me without a jury in Charleston, South Carolina on July 28, 1964. They were brought pursuant to the Federal Tort Claims Act, Title 28 U.S.C.A. § 1346(b) and § 2671 et seq.

Civil Action No. 7795 involves property damage only, and the three remaining actions involve personal injuries to John M. Humphries, his wife Marie Sauls Humphries, and their son Stanley C. Humphries.

At the time of trial, plaintiff made a motion in Civil Action No. 7843 to increase the ad damnum from $4,000 to $10,000. Without objection, the motion was granted.

Plaintiffs, in their respective complaints, allege that on May 2, 1962, John M. Humphries was driving a 1956 Chevrolet automobile, owned by Luther R. and Martha Humphries, in a careful and prudent manner. Marie Sauls Humphries was a passenger riding on the right front seat, Stanley was riding in the rear seat. They were traveling on U. S. Highway 17 near Ashepoo, South Carolina, headed toward Charleston, when the automobile in which they were riding was forced off the highway by a United States Marine Corps vehicle which veered directly into the path of plaintiff's automobile. Their car ran into a deep ditch, hit a large stump, and overturned one or more times, inflicting permanent personal injuries to plaintiffs, causing them grievous pain and suffering, and badly damaging the said automobile.

At the beginning of the trial, the defendant admitted liability in all four cases, leaving only the question of the amount of damages for personal injuries and property damage to which plaintiffs are entitled for determination by the court.

In accordance with Rule 52[a] of the Federal Rules of Civil Procedure, I find the facts specially, as to the property damage and personal injuries suffered by the plaintiffs proximately resulting from the aforesaid accident, as follows:

I. As to plaintiff, John M. Humphries. At the time of the accident he was 36 years of age, his life expectancy under the South Carolina Mortuary Table was 33.97 years [1], and had been working as a service station attendant, although he was not employed at the time the wreck occurred.

Following the accident he was able to remove himself from the car and help his wife and son. He did not require first aid treatment, but was examined later that same day by Dr. Stanley F. Morse, Jr., his family doctor in Beaufort, South Carolina. Although he was not hospitalized after the wreck, he suffered the following personal injuries: Whiplash injury to neck with cervical 6 and 7 sprain; mild contusion of the right elbow; moderately severe contusions of the lower right chest; hematoma of right calf with contusions; moderate sprain of right knee with ecchymosis and fluid within the joint; and bulging of the right lower abdominal quadrant in the area of a previous hernia repair [2].

1. S.C.Code 1962, Section 26–12.

2. Due to plaintiff's previous history of polio as a child, there was a conflict in the medical testimony as to the proximate cause of this bulge. The defendant's witness, Dr. Knud-Hansen, a surgeon in the Navy Medical Corps, testified that the bulge was not a hernia and was probably caused by the weakened condition of plaintiff's muscles due to the polio and would have occurred without trauma. Dr. Morse testified that the bulge was noticed about one month after the accident

The foregoing injuries caused plaintiff to suffer pain in his elbow for approximately 10 days, chest pains for 3 months, and pains in his right leg for 2 to 3 months. He is still troubled with a grating or clicking sensation in his neck, which is annoying but not disabling. He is still suffering pain and tenderness in the area of the abdominal bulge. This bulge is a protusion of the abdominal wall approximately 5 x 7 inches in size and extends outward about one inch. It is sore and sensitive to touch. This condition is static at the present time and there has been no further enlargement noted during the past two years. According to Dr. Morse he is forced to restrict himself from heavy work and lifting.

In conclusion, I find that plaintiff, John M. Humphries, suffered severe pains in his chest, leg, elbow and knee for a period of one to three months; that he has suffered since the accident, and will continue to suffer in the future, some annoying but not disabling condition in his neck; that he has developed since the accident a permanent bulge in the lower right quadrant of the abdominal wall which remains sore and painful, but has not enlarged over the last two-year period.

I further conclude that plaintiff's inability to do heavy lifting and hard manual labor is not altogether attributable to his injuries from this accident, but is also caused by his prior history of polio, the two previous hernia operations, a dislocated hip and fractured hip bone, all suffered prior to this accident.

I further find that said plaintiff has expended or has become liable for the following sums for hospital, medical and drug bills for himself, his wife and his son because of the injuries they received in the accident: Marie S. Humphries $306.83, Stanley Humphries $200.16, John M. Humphries $222.69; in addition

he has lost time from his employment in visiting the doctor, and incurred travel expenses in an amount of $41. The total of these special damages is $770.68.

Plaintiff contends that he lost $400 for two months' wages as a result of his said injuries. However, he was unable to work and was under a doctor's care for his hip injuries at the time of the accident. I conclude that such lost earnings did not result from the accident here.

II. As to plaintiff, Marie Sauls Humphries. At the time of the accident she was 35 years of age and had a life expectancy of 34.88 years [3]. Following the accident she was taken to the Walterboro Hospital for emergency first aid treatment, and later that day she was treated by Dr. Morse in Beaufort. Her injuries did not require that she be hospitalized, but she was confined to bed at home for 7 to 10 days and was unable to return to work for 4 weeks.

She suffered the following personal injuries: Mild cerebral concussion, with no brain damage; multiple extensive contusion with extensive ecchymoses over both orbits and upper eyelids, right anterior chest wall and right breast, left forearm and right knee, also below the left knee; moderately severe whiplash neck injury; moderate sprain, left thumb and right index finger; ragged laceration of scalp 1½ inches long with large hematoma underlying the laceration, with considerable loss of blood; moderate sprain left knee, from which she still has trouble and pain; emotional shock, moderately severe manifested by tension headaches and an increase in her pre-existing migraine attacks. There is no noticeable disfigurement from the scalp laceration since the scar is completely covered by the hairline; the moderate sprain to thumb and finger cleared within 10 or 12 weeks.

and never before, and was a result of the accident; that the previous hernia repair in this area was completely successful and plaintiff had been discharged just prior to this accident with an excellent

result. Dr. Morse had performed the hernia operation.

3. See Note 1, supra.

Prior to the accident plaintiff, who is 5′ 2″ in height and weighs 260 pounds, had been treated for high blood pressure, and phlebitis, and had a history of migraine headaches.

In conclusion I find that plaintiff received multiple, severe injuries to her head, limbs and body, causing her to suffer severe and excruciating pain and mental anguish as a result thereof for a period of approximately 3 months. I further find that she still has pain in her knees, she suffers more frequent attacks of migraine headaches since the accident and will continue to so suffer from both conditions in the future for an indeterminate period.[4] For five or six years prior to the accident the migraine attacks were limited to 3 or 4 a year. Since the accident the attacks occur once or twice a month.

I further find that the plaintiff Marie Sauls Humphries is entitled to four weeks lost wages for the period she was recuperating at home from her injuries and unable to resume her work. At the time of the accident she was employed as a bookkeeper at $49.50 per week, losing a total of $198 in earnings.

III. As to plaintiff, Stanley C. Humphries. At the time of the collision Stanley was an average four year old child in good health with no emotional problems. Following the wreck he was taken to the Walterboro Hospital along with his mother for first aid treatment and later that day was examined and treated by Dr. Morse in Beaufort. Dr. Morse found that he had been struck a severe blow to his head, he received a contusion of his left forehead over the left eye, a contusion and swelling on the top of his head, and tenderness in the lower chest wall. There were no broken bones. He also suffered a moderately severe emotional shock. It was not necessary that he be hospitalized. Since the accident he has become somewhat emotionally disturbed, has frequent nightmares, cannot sleep alone, wakes up often at night screaming and crying, and is highly nervous.

At the trial Dr. Morse testified that there was a ridge or small bump on the top of plaintiff's head ¼″ high, ⅜″ wide, ¾″ long, which in his opinion resulted from the blow to his head received in the accident, or which at least had gotten larger because of the blow, and was very tender for some time after the wreck. However, he would not say positively that the plaintiff did not have the bump on his head prior to the accident. This ridge or bump is not painful or disabling. Dr. Jackson, a neuro-surgeon, and Dr. Knud-Hansen, a general surgeon, both witnesses for the defense, stated that in their opinion the protrusion on plaintiff's head was a normal overgrowth of the bones of the skull and was in no way attributable to the accident.

Dr. Morse referred Stanley to Dr. Henry A. Brandt in Savannah, Georgia, a specialist in psychiatry, neurology, and electroencephalography, in connection with his emotional condition and nightmares. Dr. Brandt's examination ruled out any pathological or organic injuries, and found an anxiety reaction manifested by nervous tension and excessive nightmares. He stated that the anxiety reaction seemed to be related to the accident.

The evidence is convincing that the prognosis for the plaintiff's emotional disturbance is good, and that he should fully recover in time.

In conclusion, I find that plaintiff, Stanley Humphries, received multiple injuries to his head, body and limbs in the accident, that he suffered severe pain and anguish as a result thereof for approximately 2–3 months; that he developed an anxiety reaction, manifested by nightmares, which is not a permanent condition, but will continue for some time in the future.

4. Dr. Morse testified at the trial that he did not know how long the migraine attacks would continue but in his report of August 24, 1962 he stated that the attacks should not result in any permanent disability and should improve with time. Defendant's witness, Dr. Jackson, also testified that with passage of time this condition will improve and he did not consider it to be permanent.

IV. As to property damage of plaintiffs, Luther R. and Martha Humphries. It was stipulated by counsel for plaintiffs and defendant at a pretrial conference held on July 9, 1964 that the 1956 Bel-Air Chevrolet, driven at the time of the subject accident by plaintiff John M. Humphries, owned by plaintiffs, Luther R. and Martha Humphries, was valued at $612.-85 prior to the accident; that in the wreck the said automobile was a total loss; that wrecker fee and storage charges in the amount of $50 were incurred, and that the highest bid for the salvage was $90, resulting in a net amount of property damage of $572.85.

I therefore find and conclude that plaintiff, John M. Humphries, is entitled to judgment of Two Thousand, Five Hundred and 00/100 ($2,500.00) Dollars as actual damages for personal injuries and Seven Hundred Seventy and 68/100 ($770.68) Dollars for special damages, making a total judgment of Three Thousand, Two Hundred Seventy and 68/100 $3,270.68) Dollars; that plaintiff, Marie S. Humphries, is entitled to judgment of Three Thousand and 00/100 ($3,000.00) Dollars as actual damages for personal injuries and One Hundred Ninety-eight and 00/100 ($198.00) Dollars for special damages, making a total judgment of Three Thousand, One Hundred Ninety-eight and 00/100 ($3,198.00) Dollars; that plaintiff, Stanley C. Humphries, is entitled to judgment of Two Thousand, Seven Hundred Fifty and 00/100 ($2,-750.00) Dollars as actual damages for personal injuries; and that plaintiffs, Luther R. and Martha Humphries, are jointly entitled to judgment of Five Hundred Seventy-two and 85/100 ($572.-85) Dollars as actual property damages; and it is so ordered.

It is further ordered that plaintiffs' attorneys, Dowling, Dowling, Sanders and Dukes, shall receive twenty (20%) per centum of the amounts of the judgments hereinabove awarded to plaintiffs as attorneys' fees for representing them in these actions, which fees shall be paid out of, but not in addition to, the amounts of said judgments.